This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38438**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JAIME CERDA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** Defendant Jaime Cerda appeals his convictions for aggravated fleeing a law enforcement officer (NMSA 1978, § 30-22-1.1(A) (2003, amended 2022)); two counts of possession of a controlled substance (marijuana and methamphetamine) (NMSA 1978, § 30-31-23(A) (2011, amended 2021)); two counts of tampering with evidence (marijuana and methamphetamine) (NMSA 1978, § 30-22-5 (2003)); resisting, evading or obstructing an officer (NMSA 1978, § 30-22-1(D) (1981)); and possession of drug

paraphernalia (NMSA 1978, § 30-31-25.1(A) (2001, amended 2022)). Defendant raises various claims of error on appeal. We reverse Defendant's tampering with evidence (marijuana) conviction on double jeopardy grounds; unpersuaded by Defendant's remaining claims, we otherwise affirm.

## DISCUSSION

**{2}** The charges in this case arose from Defendant's flight from a police officer and subsequent standoff with law enforcement while Defendant took refuge in his cousin's trailer home. Following a jury trial, Defendant was convicted of the above-referenced crimes. He raises the following arguments on appeal: (1) the admission of uncharged bad-act evidence constituted plain error; (2) the district court abused its discretion by denying his request to call what he says was a rebuttal witness; (3) the district court's restitution order is invalid; and (4) the two tampering convictions violate the double jeopardy protection against multiple punishments for the same offense. We address these arguments in turn.

### I.    Evidence of Uncharged Misconduct

**{3}** First, we address Defendant's argument that the district court erred by allowing "the State to present extensive evidence of uncharged misconduct involving damage [Defendant] caused to the trailer" during his standoff with law enforcement. Because Defendant did not object to the introduction of this evidence, our review is for plain error. *See State v. Muller*, 2022-NMCA-024, ¶ 42, 508 P.3d 960; *see also* Rule 11-103(E) NMRA ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved.").

**{4}** "The plain-error rule applies only if the alleged error affected the substantial rights of the accused." *Muller*, 2022-NMCA-024, ¶ 43 (omission, internal quotation marks, and citation omitted). "Because it is an exception to the preservation requirement, we apply the rule sparingly and only when we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *Id.* (internal quotation marks and citation omitted). "Furthermore, a determination of whether reversal is warranted on the ground of plain error ultimately requires an examination of the alleged errors in the context of the testimony as a whole." *Id.* (internal quotation marks and citation omitted). The burden is on the defendant asserting plain error. *See id.*; *cf. State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that the trial court's rulings are presumed to be correct and that the burden of demonstrating any claimed error in those rulings is on the appellant).

**{5}** Even if we assume that the admission of the evidence at issue was erroneous under Rule 11-404(B) NMRA or Rule 11-403 NMRA, as Defendant contends,[1]

---

1The State persuasively argues that the evidence at issue was admissible by virtue of being relevant to the possession of paraphernalia charge and being evidence of identity. Defendant fails to address these arguments in his reply brief. *See Vanderlugt v. Vanderlugt*, 2018-NMCA-073, ¶ 49, 429 P.3d 1269

Defendant fails to persuade us it rose to the level of plain error. Despite acknowledging that the plain-error standard applies, Defendant does not explain how the standard is met—i.e., how the introduction of the evidence, considered in the context of the evidence as a whole, affected his substantial rights. Nor does Defendant analyze how the purported error infected the fairness or integrity of his trial such that we should have grave doubts about the validity of the verdict. *See Muller*, 2022-NMCA-024, ¶ 43. Instead, Defendant—citing the nature of the evidence admitted and the State's failure to give notice of an intent to offer the evidence—contends only that the error is "obvious" and prejudice is "inherent." In the absence of a developed plain-error argument, Defendant fails to persuade us he is entitled to reversal on this issue. *See id.* ¶¶ 43-45 (rejecting the defendant's plain-error claim on same ground); *see also State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622 ("This Court will not rule on an inadequately-briefed issue where doing so would require this Court to develop the arguments itself, effectively performing the parties' work for them." (internal quotation marks and citation omitted)).

## II.     Denial of Request to Call a Witness

**{6}**     Next, we address Defendant's argument that the district court abused its discretion by denying his request to call his brother to testify as a rebuttal witness. According to Defendant, this testimony was needed to impeach Defendant's cousin, who testified that he had not been with Defendant at the trailer playing video games on the day of the incident. Defendant's brother purportedly would have testified that, while in North Dakota, he was playing video games online with both Defendant and his cousin that afternoon. The district court agreed with the State that the testimony Defendant sought to introduce was alibi—not rebuttal—evidence, and, as such, should have been, but was not, disclosed before trial pursuant to Rule 5-508 NMRA. Additionally, the court found that Defendant's nondisclosure was not excused by any genuine surprise at trial and that the lack of notice prejudiced the State. The district court accordingly disallowed the testimony.

**{7}**     Defendant's argument on this issue is less than clear. He asserts he "does not accept" the State's "characterization" of the brother as an alibi witness, but does not explain why it was error for the district court to determine that the brother was an alibi, as opposed to a rebuttal, witness. We accordingly reject, as undeveloped, Defendant's suggestion that the district court erred in treating the brother's testimony as alibi evidence. *See State v. Candelaria*, 2019-NMCA-032, ¶ 48, 446 P.3d 1205 (declining to address an undeveloped claim); *see also State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (providing that appellate courts are under no obligation to review undeveloped arguments).

**{8}**     Anticipating that we might conclude the district court did not err in determining the brother to be an alibi witness, Defendant, relying on *McCarty v. State*, 1988-NMSC-079, 107 N.M. 651, 763 P.2d 360, argues that the district court nonetheless erred in

---

(holding that an issue may be deemed conceded where the reply brief was silent regarding an argument raised in the answer brief).

barring the brother's testimony. We disagree. *McCarty* observed it was "clear that a trial court [has] the discretion to preclude defense testimony as a sanction for failure to comply with a demand for notice of alibi." *Id.* ¶ 15. In exercising such discretion, "the trial court should balance the potential for prejudice to the prosecution against the impact on the defense and whether the evidence might have been material to the outcome of the trial." *Id.* ¶ 10; *see also id.* ¶ 15 (providing that "[b]efore a defendant's sixth amendment rights are derogated as a sanction for noncompliance, a trial judge must exercise [their] discretion within recognized parameters"). Further, "[t]he trial judge should consider whether the noncompliance was a willful attempt to prevent the [s]tate from investigating facts necessary for the preparation of its case." *Id.* ¶ 16. In light of these considerations, *McCarty* concluded it was an abuse of discretion to exclude the defendant's alibi witness for failure to provide proper notice, because the state was not prejudiced by the lack of notice, the testimony was critical to the defense, and defense counsel's conduct in not providing notice was deemed not willful. *Id.* ¶ 17.

**{9}** *McCarty* does not compel the conclusion that the district court here abused its discretion. Although the State was able to interview the brother during a lunch recess, the State nonetheless was prejudiced by the lack of notice because, as the district court found and Defendant fails to recognize, the prosecution had no opportunity to obtain online or other records confirming or refuting the brother's proffered testimony. This is in contrast to the circumstance in *McCarty*, where there was no such prejudice. *See id.* Furthermore, Defendant does not analyze the relative weight of that prejudice against the impact on his defense. This case is thus unlike *McCarty*, where "the precluded testimony was critical to the defense's ability to impeach the credibility of the [s]tate's key witness." *See id.* Lastly, the district court here found that defense counsel's nondisclosure was not excused by any genuine surprise in the cousin's testimony—a finding, the State submits, that amounts to a determination that the lack of notice was willful. This again is in contrast to *McCarty*, where no such willfulness was found. *See id.* ¶¶ 16-17.

**{10}** Under these circumstances, we reject Defendant's argument that the district court abused its discretion by preventing him from calling his brother as a witness. *See State v. Watley*, 1989-NMCA-112, ¶¶ 7-9, 109 N.M. 619, 788 P.2d 375 (concluding that the denial of a request for alibi testimony was not an abuse of discretion, where granting it would have prejudiced the state, and where the evidence had limited probative value).

### III.    Restitution Order

**{11}** Third, we address Defendant's argument that the district court imposed an illegal sentence in the form of an order to pay $46,016.90 in restitution to an insurance company for the damage he caused to the trailer. Evidently, the company paid that amount to the policyholder as compensation for the damage caused by Defendant during his standoff with police and by a SWAT team when it extricated Defendant from the trailer. Defendant objects to the restitution order for the first time on appeal,[2]

---

[2]Relying on *State v. Paiz*, 2011-NMSC-008, 149 N.M. 412, 249 P.3d 1235, Defendant argues we may review this issue even though it was not preserved. *See id.* ¶ 33 ("A trial court does not have jurisdiction

claiming it was not authorized by the victim restitution statute, NMSA 1978, § 31-17-1 (2005), on the ground that "there is no connection between the crimes with which [Defendant] was charged and for which he was convicted, and any property crimes that the State chose not to pursue in this case." We disagree.

**{12}**    This Court recently held in *State v. George*, 2020-NMCA-039, 472 P.3d 1235, that a restitution order's validity is conditioned on "a direct relationship between the crime for which there is a plea of guilty or a verdict of guilty, and the damages asserted by the victim." *Id.* ¶ 8 (internal quotation marks and citation omitted). Defendant appears to argue that because there are property crimes he could have been, but was not, charged with—crimes that purportedly bear a more direct relationship to the damage he caused—the restitution order here is invalid under *George*. Defendant, however, cites no authority for the unstated premise of his claim—that a restitution order is valid *only* if the defendant was convicted of the crime or crimes bearing the *most* direct relationship to the damage. We therefore assume none exists and dismiss this contention. *See State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200.

**{13}**    The key question under *George* is whether at least one of the crimes for which Defendant was convicted bears a "direct relationship" to the damages he caused. *See* 2020-NMCA-039, ¶ 8. Pointing to Defendant's conviction for resisting, evading or obstructing an officer, the State argues, "The damages . . . were the direct result of Defendant's efforts to avoid capture and criminal punishment." Specifically, as the State argued to the jury and explains on appeal, Defendant committed the crime of resisting, evading or obstructing an officer by barricading himself in the trailer and slashing his wrists in an effort to avoid apprehension and eventual punishment for his other crimes—thereby necessitating the use of a SWAT team to extricate him from the residence. We find the State's argument persuasive, particularly in the absence of any argument to the contrary from Defendant on this point. We therefore conclude there was an "adequate evidentiary basis" to establish a direct or causal relationship between Defendant's criminal activities and the damage suffered by the insurance company. *See State v. Madril*, 1987-NMCA-010, ¶ 7, 105 N.M. 396, 733 P.2d 365. We accordingly reject Defendant's claim that the restitution order is invalid.[3]

## IV.    Double Jeopardy

**{14}**    Finally, we address Defendant's double jeopardy argument. The evidence at trial showed that Defendant, in a single act, threw two baggies (one containing methamphetamine and the other containing marijuana) out the window of the vehicle he

---

to impose an illegal sentence on a defendant and, therefore, any party may challenge an illegal sentence for the first time on appeal."); *see also State v. Jensen*, 1998-NMCA-034, ¶¶ 5-6, 124 N.M. 726, 955 P.2d 195 (holding that a claim that a restitution order was statutorily unauthorized could be raised for the first time on appeal). Because the State does not argue otherwise, we address the merits of Defendant's argument.
3This holding necessarily defeats Defendant's related claim that his trial counsel rendered ineffective of assistance counsel by not objecting to the validity of the restitution order.

was driving while fleeing the police. Defendant was convicted of, and sentenced, for two counts of tampering with evidence—one for each baggy.

**{15}** Defendant raises a "unit of prosecution" claim, asserting that he was unconstitutionally subjected to multiple punishments for the same crime when he was twice convicted of tampering with evidence. *See State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (referring to double jeopardy-based claims challenging multiple convictions under a single statute as "unit of prosecution"). The relevant inquiry for such a claim "is whether the Legislature intended punishment for the entire course of conduct or for each discrete act undertaken by a defendant." *State v. Sena*, 2016-NMCA-062, ¶ 8, 376 P.3d 887 (alteration, internal quotation marks, and citation omitted). Resolution of this issue is controlled by *DeGraff*—a unit of prosecution case involving the offense of tampering with evidence. *See* 2006-NMSC-011, ¶¶ 32-34.

**{16}** *DeGraff* held that "the Legislature intended a more moderate result" than "punish[ing] a defendant for every individual piece of evidence hidden." *Id.* ¶ 34. The pertinent inquiry is thus "whether a defendant's actions can be divided into discrete acts." *Id.* Only one conviction is permitted where they cannot. *Id.* Here, there is but one act of tampering—throwing the baggies from the vehicle—and, therefore, as the State concedes, only one of Defendant's two tampering with evidence convictions can stand. *See id.* ¶¶ 37-39 (reducing three convictions for tampering with evidence to one where three articles of evidence were "thrown together, in a single box, on the side of the road").

**{17}** The only question remaining is: which count should be vacated—Count 3 (pertaining to the methamphetamine), a fourth-degree felony, or Count 5 (pertaining to the marijuana), a petty misdemeanor?[4] *See* § 30-22-5(B)(2), (3); § 30-31-23(B)(1), (E) (2011). Defendant says only that "one of his convictions" should be vacated, while the State specifies that it should be the one associated with the lesser charge. We agree with the State. *See State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426 ("[W]here one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence.").

## CONCLUSION

**{18}** For the foregoing reasons, we reverse on double jeopardy grounds Defendant's conviction for tampering with evidence (marijuana) as reflected in Count 5 and remand to the district court to vacate the same. We affirm Defendant's remaining convictions.

**{19}    IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

---

4We refer to the tampering counts using the numbering in the jury instructions and the judgment and sentence.

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**KATHERINE A. WRAY, Judge**